Stevens, J. (dissenting).
The accident herein occurred December 21, 1969 at about 7:15 p.m. Plaintiff, age 17 at the time, his brother age 19 and two friends, had come to the campus to play basketball. The testimony was that prior to the date of the accident, beginning in September, 1969, plaintiff had visited the campus eight or nine times to play basketball in the gymnasium. The visits were always on Sunday afternoon, and always at or about the same hour. None of the boys were students at the university.
There is no positive testimony as to how the accident happened, that is, whether the infant plaintiff actually ran into the wire as is claimed, or whether the accident was caused by the curb. After the accident, his body was found on the grass, two or three feet from the curb, with his head toward the south and his feet pointing north towards the gym. The accident occurred within the area of three parking spaces, which was marked by signposts as a loading zone and enclosed on three sides by wire cable stretched between the posts. This area had been so marked for at least six months prior to the date of . the accident and was used for loading and unloading vehicles making deliveries to the gymnasium. There were signs designating this as a no parking zone and there was testimony that, hanging from the center of each section of cable, was a yellow-reflective board.
There was no record of any prior or subsequent accidents in that area, and there was testimony that the lighting or illumination in the area was adequate.
*741 The accident occurred at a time when the school was on intercession or Christmas recess. All students remaining on campus were required to have identification passes bearing their photographs. A sign at the entrance to the. campus required all visitors to have passes. None of the persons involved herein registered or signed in at the university or had passes. Plaintiff’s brother, a witness at the trial, testified he did not recall seeing the sign and that they did not stop at the entrance gatehouse to request passes, although there usually was a guard at the gatehouse.
Uncontradicted testimony established that the sign and the wired enclosure existed long prior to the accident. The hour of 7:00 p.m. in September, the time of the first visits, is normally a daylight hour. The signs and the cable were in plain view and had the parties looked, they would have seen. The cable wire did not constitute a concealed condition of danger of which the infant plaintiff had to be alerted.
No matter what the status of the infant plaintiff, whether trespasser, invitee or licensee, it is difficult to find any breach of duty owed by defendant to the plaintiff. Certainly there was no duty to erect a particular type, of barrier or to remove the-wiring around the enclosure. There were clearly defined walkways or thoroughfares leading.from the parking lot to the gymnasium. The defendant could not reasonably foresee that the plaintiff would elect not to follow a recognized path and thereby suffer harm. The duty of care should be measured by the probability of harm.
The trial court and the majority at the Appellate Division concluded that plaintiff was a licensee. As such, although he entered to serve only his own purposes, viz. to play basketball, in order to be a licensee, he must have entered with the express or implied-in-fact consent of defendant. The likelihood of presence and of harm serves as the basis for the duty of care. It is not an unusual condition on a campus to close off an area for loading and unloading vehicles.
The defendant urges that the plaintiff was in fact a trespasser and in violation of subdivision 5 of section 240.35 of the Penal Law because he and those who accompanied him had entered and remained upon the property without permission and against the rules of the university. (Cf. People v. Cohen, 32 N Y 2d 942.) This contention has merit. None of the boys had express *742 permission to nse the gymnasium. The record is barren also of information which would indicate knowledge of use and acquiescence therein by the authorities from which permission could be implied. However, even if we consider the plaintiff as a licensee, as the other courts have found, he still must show that the defendant had knowledge of a dangerous condition. This was a campus for students and others legitimately on the grounds. The condition was open and obvious and clearly entailed no hidden risks as attested to by the .absence of accidents prior or subsequent to the one which occurred here. The defendant was only obligated to use reasonable care or exercise reasonable care to make the premises reasonably safe and to take reasonable precautions against undue risk of harm. To term the wiring a danger, and that is not our conclusion, it still could not be reasonably anticipated that the plaintiff would abandon the - roadway so as to encounter it in that small, restricted area. The duty to remove a danger does not extend to a place where it is not likely to be encountered.
It is true that the plaintiff was statutorily an infant by reason of his age. Aside from the statute, age in this case has a significance only as it might affect a capacity to comprehend a danger or a risk of harm. Plaintiff’s obligation was to exercise such a degree of care as might reasonably be expected of one of his age, experience and intelligence. To run across unfamiliar terrain in the dark or in an area not adequately illuminated (if we accept the contention of the plaintiff) is a form of self-exposure to unknown risks and is not such care as reasonably might be expected of a 17 year old about to graduate from high school. The conduct of defendant in placing the wire could hardly be termed the creation of a foreseeable' and unreasonable risk to others. “ A licensee takes the property as he finds it with a duty upon the owner to refrain from any affirmative act. of negligence and from inflicting any willful or wanton injury.” (Molnar v. Slattery Contr. Co., 8 A D 2d 95, 98.) “ Toward mere trespassers or bare licensees the rule is well settled that the only duty owing to them by the owner or occupier of land is to abstain from inflicting intentional, wanton or willful injuries unless he maintains some hidden engine of destruction, such as'spring guns or kindred devices, upon his property.” (Mendelowitz v. Neisner, 258 N. Y. 181, 184.) (See, also, 2 Harper *743 and James, Law of Torts, § 27.8, on the duties to licensees of owners and occupiers of land.)
The State is not an insurer and it is liable for negligence to the same extent as would be other corporations or private persons. Before the State would be cast in liability, it has to be shown that there was a duty imposed which it was obliged to exercise in favor either of this individual plaintiff or the general public, of which he was a part; that there was a failure to perform that duty and a consequent injury so connected with the failure as to be the proximate cause of the injury. In Molnar v. Slattery Contr. Co. (supra, p. 99) it was said,
“ There is no competent proof here of a snare or a trap for the condition complained of was readily discernible, not created with a view to causing harm to invitees or trespassers, nor in and of itself, unreasonably dangerous.
“ Likelihood of presence; probability of harm; obviousness or degree of danger; notice; foreseeability; whether a duty of care existed and, if so, was that duty breached; and did such breach proximately cause harm are all factors to be considered ’ ’.
Before it can be concluded that the defendant acquiesced in the plaintiff’s entry upon the premises, it must be shown that the defendant had some knowledge of his coming, and there is absolutely nothing in the record which so indicates. The fact that plaintiff had on eight or nine previous occasions over a period of three or four months, come upon the campus to play basketball, would not in and of itself ripen into an' invitation for use. Nor would it amount to permission, unless it was shown that the defendant had knowledge of the use of the premises by the plaintiff and failed to object. Considering the plaintiff as a licensee, there is no duty of active vigilance on the part of the defendant. (See, generally, 3 Warren, New York Negligence [2d ed.], Licensees, §.4.01, p. 270.) Here, the wire cable was open and obvious, as was the case in Arthur v. New York City Housing Auth. (14 A D 2d 519, affd. 12 N Y 2d 982), which involved a concrete divider, and there was a regular path upon which pedestrians could walk. There is no showing in the case before us that there was. any- obstruction of the thoroughfare or any impediment to the use of the thoroughfare. The fact that the plaintiff elected to cross the grass should not be allowed to impose liability upon this defendant. The defendant was not obligated to make all areas outside of the traveled portion safe *744 for either pedestrians or for a use not reasonably to be contemplated or foreseen. Whether plaintiff be considered a licensee or a trespasser (where the duty owed is less), there is no basis here for liability.
The order appealed from should be reversed, the judgment vacated and the claim dismissed.
Order affirmed, etc.